United States District Court
Southern District of Texas

**ENTERED**

June 21, 2024

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

NE SHORE TECHNOLOGIES, INC.,           §
                                        §
*Plaintiff*,                            §
                                        §
                                        §
v.                                      §        CIVIL ACTION NO. 4:23-3413
                                        §
PROFESSIONAL CREDENTIALS                §
EXCHANGE, INC.,                         §
                                        §
                                        §
*Defendant*.                            §

## MEMORANDUM AND RECOMMENDATION

Plaintiff's case asserting claims for breach of contract, tortious interference, and misappropriation of trade secrets is before the Court on Defendant's Rule 12 Motion to Dismiss.[1]  Having considered the parties submissions and the law, the Court recommends that Defendant's Motion be GRANTED but Plaintiff given leave to amend its claims for breach of contract and tortious interference with existing contracts.

## I.    Background

Plaintiff and Defendant entered into a Master Software Development Agreement (MSDA) on January 1, 2020.  ECF 14-1.  The MSDA governed the parties' relationship whereby Plaintiff, the "Developer" and Defendant, the

---

[1] The District Judge referred the case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72.  ECF 16.

"Company," would enter "Work Agreements" by which Plaintiff would source and provide workers located in India who possessed the skills needed "to develop, create, test and deliver certain software development materials" for Defendant.  *Id.* at 2.

Plaintiff alleges four separate causes of action against Defendant:  1) breach of contract; 2) tortious interference with contract; 3) tortious interference with prospective business relations; and 4) misappropriation of trade secrets.  With respect to the breach of contract cause of action, Plaintiff alleges that Defendant terminated the MSDA without complying with the termination procedures set forth in the Agreement. ECF 14.  Plaintiff also alleges that Defendant tortiously interfered with its existing and potential contracts by terminating the MSDA and then directly hiring the workers sourced and identified by Plaintiff.  *Id*.  Lastly, Plaintiff alleges that its roster of skilled IT workers constitutes a trade secret that was misappropriated by Defendant when it contacted and hired the workers directly.  *Id.*

Plaintiff initiated this case by filing a Complaint in September 2023, followed by a First Amended Complaint and a corrected First Amended Complaint.  ECF 1; ECF 6; ECF 14.  The corrected First Amended Complaint is identical to the initial First Amended Complaint except that the corrected First Amended Complaint attaches the MSDA as an Exhibit.  But, before Plaintiff filed the corrected First Amended Complaint, Defendant moved to dismiss all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible claim for

relief.  ECF 11.  Despite having been filed after Defendant's Motion to Dismiss, the corrected First Amended Complaint (ECF 14) is Plaintiff's operative pleading for purposes of determining Defendant's Motion to Dismiss.  *See* ECF 18.  Defendant's Motion to Dismiss has been fully briefed and is ripe for determination.  ECF 11; ECF 22; ECF 25.

## II.    Rule 12(b)(6) Standards

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  *Alexander v. AmeriPro Funding, Inc.*, 48 F.3d 68, 701 (5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  However, the court does not apply the same presumption to conclusory statements or legal conclusions.  *Iqbal*, 556 U.S. at 678-79.

Generally, the court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion.  If a motion to dismiss

refers to matters outside the pleading it is more properly considered as a motion for summary judgment. *See* FED. R. CIV. P. 12(d).  However, the court may take judicial notice of public documents, and may also consider documents a defendant attaches to its motion to dismiss under 12(b)(6) if the documents are referenced in the plaintiff's complaint and central to the plaintiffs' claims.  *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011).  In this case, the Court will consider the Master Software Development Agreement (MSDA) attached to Plaintiff's corrected First Amended Original Complaint and Jury Demand (FAC).  ECF 14-1.

### III.   Analysis

Defendant moves to dismiss Plaintiff's case in its entirety for failure to state a plausible claim for relief.  The Court analyzes separately each cause of action addressed in Defendant's Motion to Dismiss.

### A.  Breach of Contract

The parties agree that Texas law governs the operation and interpretation of the MSDA.  ECF 14-1 at 10, ¶ 14(a).  The essential elements of claim for breach of contract under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Mullins v.*

*TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. Denied)).

Plaintiff's FAC alleges that (1) Plaintiff and Defendant entered a valid contract, i.e., the MSDA; (2) Plaintiff performed its obligations under the MSDA by providing workers pursuant to Work Statements as contemplated by the MSDA; (3) Defendant breached the MSDA by not complying with the termination procedures set forth in ¶ 13 of the MSDA; and (4) Defendant's breach caused Plaintiff injury. ECF 14 ¶¶ 49-58.   Defendant argues the breach of contract claim should be dismissed pursuant to Rule 12(b)(6) because (1) the termination provision cited by Plaintiff as having been breached by Defendant, paragraph 13(a), is inapplicable; and (2) Plaintiff's damages allegation is conclusory.  ECF 11 at 11-13.

### 1.  Plaintiff's allegation that Defendant breached the MSDA is sufficient to survive a motion to dismiss.

Plaintiff alleges that Defendant breached paragraph 13 of the MSDA titled "Termination."  Specifically, Plaintiff cites paragraph 13(a) of the MSDA, which provides in part:

> a. **Termination of Work Statements**: Unless otherwise provided for in the Work Statement(s), Company [Defendant] may, at its sole option, **terminate this Agreement for cause**, **which shall be defined as a material breach of the Work Statement with Developer [Plaintiff] has not commenced efforts to cure** within five (5) days after written notice or has not cured within thirty (30) days of written notice. ….

ECF 14 ¶ 31 (citing ECF 14-1 ¶ 13(a) (emphasis added)).  Defendant argues that this provision applies only to a termination of Work Statements, while paragraph 13(b) applies to termination of the MSDA itself, and therefore Plaintiff has not plausibly alleged a breach of contract.  ECF 11 at 11-12.

Paragraph 13(a) is titled "Termination of Work Statements" while Paragraph (b) is titled "Termination of Agreement."  The terms "Agreement" and "MDSA" apply interchangeably to refer to the Master Software Development Agreement.  ECF 14-1 at 2.  Despite the heading or title of paragraph 13(a), the first sentence states that Defendant "may, at its sole option, terminate *this Agreement* for cause" and proceeds to define "cause" as "a material breach of the Work Statement which [Plaintiff] has not commenced efforts to cure within 5 days after written notice . . .."  ECF 14-1 ¶ 13(a).  While the heading of paragraph 13(a) indicates that it applies to termination of Work Statements, the provision clearly refers to termination of the MSDA and provides that a material breach of a Work Statement constitutes cause for termination.  Thus, under paragraph 13(a), termination of the MSDA requires "cause" and an uncured material breach of a Work Statement constitutes "cause."

The heading of paragraph 13(a) cannot override or render meaningless the clear language in the provision.  Standard rules of contract interpretation provide that "although courts may consider the title of a contract provision or section to interpret a contract, the greater weight must be given to the operative contractual

6

clauses of the agreement." *StrucSure Home Warranty, LLC v. Sulzbach*, No. 4:20-CV-2915, 2021 WL 3516242, at *2 (S.D. Tex. Aug. 10, 2021) (quoting *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 121 (Tex. 2015)).   "[H]eadings are not determinative, and when they are inconsistent with the plain meaning of the provision's operative language, [courts] afford greater weight to the operative language." *Blue Star Sports Holdings, Inc. v. Fed. Ins. Co.*, 658 F. Supp. 3d 351, 361 (E.D. Tex. 2023).   Consistent with the general rules of contract interpretation, the MSDA itself states that "[t]he headings used in this agreement are for convenience of reference only and shall not modify, define or limit any terms or provisions of this Agreement."   ECF 14-1 ¶ 14(l).   The Court cannot ignore the language in paragraph 13(a) that appears to require "cause" for termination of the MSDA, defined as an uncured material breach of a Work Statement.

Furthermore, paragraph 13(b) tilted "Termination of Agreement," which Defendant contends is the applicable provision (*see* ECF 25 at 2-3), provides, in part, that:

> [Defendant] may terminate this Agreement for cause, which shall be defined as:
>
> (i)   the persistent or repeated failure of [Plaintiff] to supply properly skilled workers or proper materials;
> (ii)   [Plaintiff's] material breach of the Contract Documents that is not cured within 60 days after written notice.

ECF 14-1 ¶ 13(b).  Thus, paragraph 13(b) clearly requires and defines "cause" for

termination of the Agreement. *Id.*   Regardless of whether paragraph (a) or (b)

provides the applicable termination provision, both require termination for "cause"

as defined in the particular paragraph.  Plaintiff's Complaint clearly alleges that

Defendant terminated the agreement by sending an email stating that Plaintiff's

services would no longer be needed, and without giving any reason for the

termination or providing any opportunity to cure.  ECF 14 ¶¶ 32-34.  These

allegations allege a termination of the Agreement without "cause" and sufficiently

allege a breach of paragraph 13(a) or (b).  Therefore, Defendant's motion to dismiss

Plaintiff's breach of contract claim for failure to allege a breach by Defendant should

be denied.

> **2. Plaintiff's allegation of damages resulting from the alleged breach is insufficient to survive a motion to dismiss but leave to amend should be granted.**

The FAC alleges that Defendant's conduct has caused Plaintiff to lose

"income and the ability to work with future projects with other parties."  ECF 14 ¶

48.  Plaintiff also alleges that Defendant's breach has "caused injury to Plaintiff."

*Id.* ¶ 58.  Defendant argues this damage allegation is insufficient to state a plausible

claim for breach of contract.  Defendant relies on *Pension Advisory Grp., Ltd. v.*

*Country Life Ins. Co.*, 771 F. Supp. 2d 680, 700–01 (S.D. Tex. 2011) as support for

this argument.  *Pension Advisory Grp.* does not describe the pleading at issue in that

case and provides the Court with little guidance as to whether Plaintiff's allegations here are sufficient to survive a motion to dismiss.

Generally, a plaintiff need not allege a claim in detail, but must do more than recite the elements of a cause of action.  *Twombly*, 550 U.S. at 555.  As currently pleaded, Plaintiff's allegation regarding its damages resulting from Defendant's breach is nothing more than a recitation of the fourth element of a breach of contract cause of action.  *See Mullins*, 564 F.3d at 418 (listing elements).  Under Texas law, a "party may not recover damages for breach of contract if those damages are remote, contingent, speculative, or conjectural."  *Langen v. Sanchez Oil & Gas Corp.*, No. CV 4:18-02840, 2019 WL 1674348, at *3 (S.D. Tex. Apr. 17, 2019) (quoting *City of Dallas v. Villages of Forest Hills, L.P., Phase I*, 931 S.W.2d 601, 605 (Tex. App.—Dallas 1996, no writ)).  Because of this, as noted by the court in *Langen,* "[d]istrict courts in the Fifth Circuit frequently dismiss contract claims for failure to plead actual damages with specificity."  *Id.* (citing cases).  However, as in *Langen*, Plaintiff here should be given an opportunity "to properly allege actual damages, provided it can do so in light of its Rule 11 obligations."  Therefore, the Court recommends that Defendant's Motion to Dismiss Plaintiff's breach of contract claim be granted without prejudice and that Plaintiff be granted leave to file a Second Amended Complaint.

**B. Plaintiff's allegations of tortious interference with contract are insufficient to survive a motion to dismiss but leave to amend should be granted.**

A plaintiff must establish the following elements to succeed on a tortious interference with contract claim: (1) the existence of a contract subject to interference, (2) willful and intentional interference, (3) that proximately causes damage, and (4) actual damage or loss. *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017); *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 774 (S.D. Tex. 2010). Defendant argues that Plaintiff's tortious interference with contract claim should be dismissed because the FAC does not identify a specific contract that was subject to interference and does not allege facts showing that Defendant was aware of any contract. ECF 11 at 14-15.

The FAC alleges that Plaintiff "has a valid contract with its employees and contract workers in India." ECF 14 ¶ 60. The FAC also alleges Defendant willfully and intentionally interfered with those contracts by hiring the workers Plaintiff had sourced for Defendant's projects pursuant to the MSDA. *Id.* ¶ 62. Plaintiff contends Defendant interfered with Plaintiff's access to workers Plaintiff had sourced when Defendant hired those workers directly for its own projects, causing Plaintiff actual damages. *Id.* ¶¶ 63-67. The FAC does not identify a specific contract between Plaintiff and the workers with which Defendant interfered, nor does it describe the nature of the alleged "valid contract with its workers in India."

The terms of the MSDA require Plaintiff to "obtain and maintain in effect written agreements with each of its employees or contractors who participate in any of Developer's work under any Work Statement issued hereunder." ECF 14-1 ¶ 11. However, this provision addresses protection of Defendant's intellectual property and does not appear to require Plaintiff to have employment contracts with the individuals it recruits to work on Defendant's projects. *See id.* Neither the factual allegations in the FAC, nor the terms of the MSDA, identify contracts with "workers in India" that were subject to interference by Defendant's direct hiring of those workers. Thus, Plaintiff has failed to sufficiently allege the first element of a tortious interference with contract cause of action.

As pleaded, Plaintiff's tortious interference claim fails to meet the plausibility standard established in *Twombly*. At this time, however, the Court cannot say that Plaintiff has pleaded its best case. Therefore, the Court recommends that Defendant's Motion to Dismiss Plaintiff's tortious interference with contract claim be granted without prejudice and that Plaintiff be granted leave to file a Second Amended Complaint.

### C. Plaintiff cannot state a claim for tortious interference with prospective business relations.

To prevail on a claim for tortious interference with prospective business relations, a plaintiff must prove: (1) a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant acted

with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; and (4) the interference caused plaintiff actual harm or damages. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 775 (S.D. Tex. 2010) (citing *Specialties of Mex. Inc. v. Masterfoods USA,* 2010 WL 2488031, at *10 (S.D. Tex. June 14, 2010)). Defendant argues for dismissal of the claim for interference with prospective business relations because (1) Plaintiff has not adequately alleged any probable prospective business relationship with a third party; (2) has failed to allege facts demonstrating that Defendant knew about the probable prospective relationships; and (3) has failed to allege independent tortious conduct. ECF 11.

According to the FAC, Plaintiff's business involves recruiting IT talent in India and the United States (ECF 14, ¶ 69) and Defendant interfered with Plaintiff's ability to enter into business relationships with these same IT professionals. *Id.* ¶¶ 71-72. According to Plaintiff, Defendant's actions are independently tortious because Defendant wrongfully obtained and misused Plaintiff's proprietary knowledge of the IT industry to access these workers, causing injury to Plaintiff's business. *Id.* ¶¶ 75-77.

12

Plaintiff's allegations of tortious interference with prospective relations are conclusory and not supported by specific factual allegations identifying an IT professional with whom, absent Defendant's interference, Plaintiff had a reasonable probability of entering into a business relationship.  Plaintiff's allegation that it is in the business of recruiting workers fails to raise the likelihood that it would have entered a prospective relationship with particular workers beyond mere speculation. *See Law Offs. of Hilda L. Sibrian, P.C. v. McNeil Consultants, LLC*, No. CV H-23-4643, 2024 WL 1996131, at \*5 (S.D. Tex. May 6, 2024) (requiring more than conclusory allegations that plaintiff would have entered into future business relationships with unidentified prospective customers to survive motion to dismiss).

Even if Plaintiff could amend its FAC to allege facts to support inference with a reasonably probable prospective business relationship, Plaintiff cannot clear the hurdle of alleging independently tortious conduct.  Plaintiff makes the conclusory allegation that "Defendant's actions are independently tortious," but fails to identify the tort Defendant committed by hiring individuals it became aware of through its relationship with Plaintiff.  "Conduct that is merely 'sharp' or perceived as 'unfair competition' is not actionable as the basis" for a tortious interference with prospective business relationship claim.  *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 679 (Tex. App. 2004) (citing *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)).  Assuming Plaintiff bases its claim on Defendant's

13

alleged misappropriation of trade secrets, the tortious interference claim fails because such a claim is preempted by the Texas Uniform Trade Secrets Act (TUTSA). *Thomas v. Joule Processing LLC*, No. 4:23-CV-01615, 2023 WL 8437634, at *5 (S.D. Tex. Dec. 5, 2023) (dismissing with prejudice plaintiff's claim of tortious interference with prospective business relationships because TUTSA preempted the allegation of tortious interference predicated entirely on misappropriation of trade secrets).

Amendment of this claim would be futile because Defendant's "poaching" of Plaintiff's employees does not constitute independently tortious conduct. For this reason, the Court recommends that Defendant's Motion to Dismiss Plaintiff's tortious interference with prospective business relationships claim be granted with prejudice and without leave to amend.

**D. Plaintiff cannot state a claim for misappropriation of trade secrets.**

The elements of a TUTSA misappropriation of trade secrets claim are: (1) the existence of a trade secret, (2) the defendant acquired the trade secret through a breach of a confidential relationship or discovered by it improper means, and (3) the defendant used the trade secret without authorization from the plaintiff. *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 772–73 (S.D. Tex. 2010) (citing *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 273 (5th Cir.2009) (quoting *Gaia Techs. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 376 (5th Cir.1999))). A trade secret is defined as a "'formula,

pattern, device or compilation of information used in a business, which gives the owner an opportunity to obtain an advantage over his competitors who do not know or use it.'" *Id.* (citing *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir.2007) (quoting *Taco Cabana Int'l v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir.1991))).

Defendant argues that Plaintiff has failed to state a trade secret misappropriation claim because it has not adequately alleged the existence of a trade secret, misappropriation of the trade secret by Defendant, or damages flowing from the alleged misappropriation. ECF 11 at 18-21. The FAC alleges that Plaintiff's list of IT professionals in the United States and India, which it developed using its industry experience and knowledge, constitutes a trade secret under TUTSA. ECF 14 ¶¶ 79-87. Plaintiff further alleges that Defendant's "appropriation of these IT professionals was in violation of the contractual relationship with Plaintiff" and caused Plaintiff economic loss. *Id.* ¶¶ 88-91.

Plaintiff cannot show that the identify of Plaintiff's workers, which were known to Defendant, constitute a protected trade secret. An owner who discloses an alleged trade secret to another, without placing a duty on the receiver to maintain the secrecy of the information, loses the protections afforded trade secrets. *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991). The MSDA does not recognize the identity of workers as confidential or a trade secret

15

and does not impose a duty of confidentiality on Defendant.   In fact, Plaintiff

warranted in the MSDA that all information it provided to Defendant was ***not***

confidential:

> No Confidential Information of [Plaintiff].  It is understood and agreed
> that [Defendant] does not wish to receive from [Plaintiff] any
> confidential information of [Plaintiff] or of any third party.  Plaintiff
> represents and warrants that any information provided to [Defendant]
> in the course of entering into this Agreement or any Work Statement or
> performing work under any Work Statement issued hereunder shall not
> be confidential or proprietary to [Plaintiff].

ECF 14-1 ¶ 10(a).  The identity of the workers sourced by Plaintiff to perform work

pursuant to Work Statements issued under the MSDA cannot constitute a "trade

secret," because Plaintiff disclosed their identity without imposing any requirements

of confidentiality or use to protect the information.

Plaintiff vehemently argues that the above contract provision does not

authorize Defendant to "poach" its workers.  ECF 22 at 23-24.  But the contract by

which Plaintiff provided the workers (and consequently their identities) does not

preclude Defendant from hiring known workers and does not require Defendant to

treat the identity of the workers as confidential or trade secret information.  For this

reason, Plaintiff also cannot satisfy the element of a misappropriation claim

requiring it to plead that Defendant obtained the trade secret by improper means.  *M-*

*I LLC*, 733 F. Supp. 2d at 772–73 (listing elements).  Under TUTSA, "improper

means" includes things such as "theft, bribery, misrepresentation, breach or

inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means" and does not include "reverse engineering, independent derivation, or any other lawful means of acquisition." *Penthol, LLC v. Vertex Energy Operating, LLC*, No. 4:21-CV-416, 2024 WL 987568, at \*10 (S.D. Tex. Mar. 7, 2024) (citing TUTSA § 134A.002(2)). Defendant is alleged to have breached the contract through wrongful termination; not by hiring Plaintiff's workers.  Plaintiff does not allege that Defendant obtained the identity of the workers by unlawful means within the meaning of TUTSA.

The allegations in Plaintiff's FAC show that Plaintiff cannot demonstrate the required elements of a trade secret misappropriation claim and leave to amend would be futile.  Therefore, the Court recommends that Defendant's Motion to Dismiss Plaintiff's misappropriation of trade secrets claim be granted with prejudice and without leave to amend.

## IV.    Conclusion and Recommendation

For the reasons discussed above, the Court RECOMMENDS that Defendant's Motion to Dismiss (ECF 11) be GRANTED.

The Court further RECOMMENDS that Plaintiff's claims for tortious interference with prospective business relations and misappropriation of trade secrets be DISMISSED WITH PREJUDICE.

The Court also RECOMMENDS that Plaintiff be granted leave to file a Second Amended Complaint within 14 days of an Order adopting this Memorandum and Recommendation to replead its claims for breach of contract and tortious interference with existing contracts.

The Court on October 27, 2023 advised Defendant of the Court's usual procedure of allowing only one dispositive motion per party and cautioned Defendant that if it chose to stand on its pending Motion to Dismiss (ECF 11) and the motion were denied, the Court would not allow a motion for summary judgment. ECF 15.  In response, Defendant filed a Notice stating that it "would like to maintain its Motion to Dismiss for the Court's consideration." ECF 18.  If the District Court adopts this Memorandum and Recommendation, Defendant may file a motion for summary judgment by November 13, 2024, the deadline set in the current Scheduling and Docket Control Order.  ECF 28.  However, the Court will not entertain a second motion to dismiss directed to the Second Amended Complaint.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on

other grounds.


Signed on June 21, 2024, at Houston, Texas.


Christina A. Bryan
United States Magistrate Judge
